UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMANA FOREST RETREAT, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br><br>                                    Defendant. | Case No.:  24-cv-1196-RSH-DDL<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>[ECF No. 16] |

Before the Court is the County of San Diego's ("the County's") motion to dismiss Plaintiffs' First Amended Complaint (ECF No. 15, "FAC"). ECF No. 16. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part the motion.

## I.    BACKGROUND

### A.    Plaintiffs' Allegations

The instant case arises from the County's permitting and code enforcement actions taken in relation to property Plaintiffs intended for religious use. The FAC alleges as follows.

### 1.    The Valley Center Property

Plaintiff William Chu is a professor of Buddhist studies and an ordained Buddhist minister. FAC ¶¶ 8–9. Plaintiff Sumana Forest Retreat ("SFR") is a nonprofit Buddhist religious organization. *Id.* ¶ 11. SFR practices and teaches Forest Tradition Theravada Buddhism, a faith centered on the exercise of meditation in secluded, remote forest settings. *Id.* ¶¶ 18–19. Chu is the leader of SFR. *Id.* ¶ 9.

In 2018, Chu purchased a 9.9-acre property located at 11923 Via Campestre, Valley Center, California (the "Valley Center Property"). *Id.* ¶ 13. Shortly after purchase, Plaintiffs began to prepare the property to host meditative retreats. *Id.* ¶ 25. To that end, between 2018 and 2019, Plaintiffs built ten yurts to serve as places for retreatants to meditate and rest. *Id.* ¶¶ 28, 57.[1]

### 2.    Major and Minor Use Permits

The Valley Center Property is located in the A70 Zoning District of San Diego County—a Limited Agricultural Use District. *Id.* ¶ 32. Land use permits are required to use property within the A70 District in certain ways. FAC ¶¶ 36, 46; ECF No. 15-4. Of relevance to the dispute, under the County's zoning ordinance, property owners are required to obtain a Minor Use Permit for "small schools, farm labor camps, and cottage industries." FAC ¶ 36; ECF No. 15-4 at 3. In contrast, property owners must obtain a Major Use Permit to use land for, among other purposes, "religious assembly." FAC ¶¶ 46, 133; ECF No. 15-4 at 4. Major Use Permit applications require approval by the County Board of Supervisors or Planning Commission. FAC ¶ 52; ECF No. 15-6 at 2. In contrast, Minor Use Permits may be approved by the Director of Planning & Development Services. FAC ¶ 53; ECF No. 15-6 at 2. Applying for a Major Use Permit may also require additional costs. FAC *Id.* ¶ 54.

---

[1]    The County disagrees that the structures are properly described as "yurts," arguing that that term indicates a simple cloth structure but that the structures at issue have kitchens, plumbing, and utilities. ECF No. 16 at 2.

### 3.    Permit Pre-Application

In 2018, Chu began the process of applying for a land use permit. FAC ¶ 55. In January 2021, Chu submitted a Major Use pre-application. FAC ¶ 62; ECF No. 15-17 at 2. Plaintiffs did not hear anything from the County regarding their pre-application in the following two years. FAC ¶ 64. Nevertheless, during the same time period, in May 2021, January 2022, and January 2023, Brandy Contreras, a Land Use/Environmental Planner in the County's Code Compliance Division, randomly conducted inspections of the Valley Center Property. *Id.* ¶ 65.

Chu and other SFR members eventually met with County officials to discuss Plaintiffs' application. *Id.* ¶ 67. The FAC alleges that over the course of two meetings, County Officials informed Chu and other SFR members that the County would never approve Plaintiffs' application because of the yurts erected on the Valley Center Property, despite not having objected previously. *Id.* ¶¶ 68–69.

### 4.    Plaintiffs Retain Counsel

Plaintiffs subsequently sought and retained counsel. FAC ¶ 76; ECF No. 15-3. In a July 6, 2023 letter, Plaintiffs' counsel advised the County that the zoning ordinance placed a substantial burden on Plaintiffs' religious exercise by requiring them to obtain a Major Use Permit. ECF No. 15-3 at 6. The letter set forth Plaintiffs' intent to bring a federal lawsuit if the Parties were "unable to come to an agreement on a Minor Use Permit." *Id.* at 2.

On October 16, 2023, the County responded that the Valley Center Property's "yurts in their current condition present serious concerns related to fire safety, structural integrity, and environmental hazards." ECF No. 15-14 at 2. The County's response further stated:

> The future use of the property will need to match the permit for which Dr. Chu and the Sumana Forest Refuge apply. If the planned use is fewer than 50 people meditating and exploring Buddhism, without taking up residence in the yurts, the County would consider a minor use permit, as it would for the arguably analogous use case of a small school. However, if transient habitation is to be a use, whether primary or accessory, a major use permit is required to ensure the resulting

health, safety, and environmental concerns are adequately examined.

*Id.* at 2. Finally, the County cautioned Plaintiffs that "[r]egardless of the permit ultimately applied for and obtained," the Valley Center Property yurts had to "be brought into conformance with the building code." *Id.* Although the letter recognized that this could be "impractical with the existing yurts," it noted the County's willingness to "explore options" with Chu and SFR as to how to do so. *Id.* at 2–3.

On December 1, 2023, Plaintiffs' counsel responded that Plaintiffs' planned use of the property would be for less than 50 persons, and reasserted their position Plaintiffs should be permitted to apply for a Minor Use Permit and maintain yurts on their property ECF No. 15-15 at 2–3.

### 5.    Application for Initial Consultation

Thereafter, Plaintiffs filed an application for a meeting with the County, known as an initial consultation. ECF No. 15-17 at 2. In a letter dated May 28, 2024, the County informed Plaintiffs it had reviewed Plaintiffs' initial consultation application. ECF No. 15-16 at 2. Based on the project description submitted with Plaintiffs' application, the County's Planning & Development Services Department concluded that Plaintiffs' project required a Major Use Permit. *Id.* at 3. The letter indicated that Plaintiffs could seek a second opinion from the County's Chief of Project Planning and Chief of Land Development. *Id.* at 4.

### 6.    Termination of Power

In early 2024, plaintiff Chu consented to have Ms. Contreras and other County officials inspect the Valley Center Property. FAC ¶ 82. Thereafter, on March 31, 2024, he received a Notice from the County's Department of Environmental Health and Quality Division indicating that graywater was "being illegally discharged onto the ground" at the property. FAC ¶ 87; ECF No. 15-17 at 2. The Notice stated that at the time of the inspection, officials observed ten yurts and several "accessory structures." *Id.* Most of the yurts had "electrical, gas plumbing, and water plumbing." *Id.* Wastewater discharge pipes "were observed from all plumbed yurts" and portable restrooms "were also observed on

property," despite there being "no approved means of wastewater treatment/disposal on the property." *Id.*

On June 7, 2024, San Diego Gas & Electric ("SDG&E") terminated power to the Valley Center Property. FAC ¶ 91. In a letter received by Chu several days later, SDG&E informed Chu it had received notification from the County that the "electrical and gas services" at the Valley Center Property presented "an immediate hazard to life and property" and that SDG&E could not reconnect power until authorized in writing to do so by the County. FAC ¶ 95; ECF No. 15-19 at 2. As of the date of the FAC, SDG&E had not reconnected power to the property. FAC ¶ 106.

### B.    Procedural Background

On July 11, 2024, Plaintiffs filed the instant action against the County. ECF No. 1. On July 12, 2024, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. ECF No. 4. The Court held a hearing on Plaintiffs' motion on July 18, 2024, and denied it without prejudice. ECF No. 8.

On September 9, 2024, Plaintiffs filed their FAC, the operative pleading in this case. ECF No. 15. The FAC asserts: (1) a Religious Land Use and Institutionalized Persons Act ("RLUIPA") substantial burden claim; (2) a RLUIPA equal terms claim; (3) a RLUIPA nondiscrimination claim; (4) a claim for violation of the First Amendment's right to free exercise of religion; (5) a claim for violation of the First Amendment's right to free speech and assembly; (6) a claim for violation of due process under the First and Fourteenth Amendments; and (7) a claim for violation of free exercise and freedom of association under the California Constitution. FAC ¶¶ 111–186.

On September 30, 2024, the County filed the instant motion to dismiss. ECF No. 16. Plaintiff filed an opposition, and the County filed a reply. ECF Nos. 19, 20.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## III.    ANALYSIS

### A.    RLUIPLA (Claims 1-3)

Plaintiffs' RLUIPA claims are based on two general categories of County actions: (1) the County's handling of Plaintiffs' pre-application for a land use permit; and (2) the County's enforcement of its building codes to cut electricity and gas to the Valley Center Property. FAC ¶¶ 111–145. The County moves to dismiss each of Plaintiffs' RLUIPA claims on various grounds, including failure to state a claim, standing, and lack of ripeness. ECF No. 16 at 11–19. The Court addresses these arguments below.

#### 1.    Generally

RLUIPA was enacted "to protect the free exercise of religion guaranteed by the First Amendment from governmental regulation." *Guru Nanak Sikh Soc'y v. Cty. of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006). It contains several provisions limiting government regulation of land use. *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163,

1169 (9th Cir. 2011). Three of these provisions are at issue here. The first—the "substantial burden" provision—"prohibits governments from implementing land use regulations that impose 'a substantial burden' on religious exercise unless the government demonstrates that they further a 'compelling governmental interest' by the 'least restrictive means.'" *Id.* at 1169 (quoting 42 U.S.C. § 2000cc(a)(1)). The second—the "equal terms" provision— "prohibits a government from imposing a land use restriction on a religious assembly 'on less than equal terms' with a nonreligious assembly." *Id.* (quoting 42 U.S.C.S. § 2000cc(b)(1)). Finally, the third—the "nondiscrimination" provision—states that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2).

### 2. Standing

The County argues plaintiff SFR lacks standing to sue under RLUIPA, because the FAC does not allege that SFR possesses a property interest in the Valley Center Property. ECF No. 16 at 12. Plaintiffs respond that SFR has standing to bring this lawsuit because Chu purchased the property and is the leader of SFR. ECF No. 19 at 16–17.

Under RLUIPA, a claimant must have an "ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C.S. § 2000cc-5(5). Here, the FAC alleges only that plaintiff Chu purchased the Valley Center Property. FAC ¶ 13. There is no indication that plaintiff SFR has an "ownership, leasehold, easement, servitude, or other property interest." Plaintiffs' alternative contention that SFR has a cognizable property interest in the Valley Center Property through Chu lacks support. *See, e.g.*, *Congregation Etz Chaim v. City of Los Angeles,* No. CV 10-1587 CAS CFEX, 2012 WL 11826032, at *3 (C.D. Cal. Apr. 17, 2012) (dismissing RLUIPA claims brought by individual members of congregation where there was no allegation any individual member held an interest in the subject property). For these reasons, the Court concludes SFR lacks standing to assert RLUIPA claims.

///

### 3.    Building Codes

The County next argues that Plaintiffs' RLUIPA claims should be dismissed to the extent they are based on the County's enforcement of its building codes, because such codes are not "land use regulations" under RLUIPA. ECF No. 16 at 11–12.

Under RLUIPA, a "land use regulation" is "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land)[.]" 42 U.S.C.S. § 2000cc-5(5); *see Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002) ("[A] government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest."). Multiple courts in the Ninth Circuit have held that "[s]afety laws such as building or construction code provisions do not qualify as 'land use regulations' under RLUIPA, at least where they do not explicitly reference zoning laws." *Temp. of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1027 (N.D. Cal. 2022); *see Salman v. Phoenix, City of*, No. CV-12-01219-PHX-JAT, 2015 WL 5043437, at *4 (D. Ariz. Aug. 27, 2015) (code sections that regulate "construction, safety, and traffic" are not land use regulations); *Anselmo v. Cty. of Shasta*, 873 F. Supp. 2d 1247, 1257 (E.D. Cal. 2012) (building and construction code that prohibited construction without a permit and did not reference zoning laws was not a "land use regulation.").

Plaintiffs do not identify the specific code sections they claim the County enforced against them. The June 7, 2025 letter from SDG&E to plaintiff Chu indicates that SDG&E was instructed to cut power to the Valley Center Property because the provision of electricity and gas to the property presented an "immediate hazard to life and property." ECF No. 15-19 at 2. The letter does not indicate which code sections were being enforced. *Id.* Similarly, the FAC cites multiple sections of the County Construction and Fire Code without identifying which sections Plaintiffs allege are "land use regulations" under RLUIPA.

*///*

8

The Court infers that Plaintiffs are challenging the County's enforcement of County Construction and Fire Code Section 91.1.112.3. Under Section 91.1.112.3, a "building official may authorize disconnection of utility service to a building, structure or system regulated by this chapter in case of emergency where the building official determines it is necessary to eliminate an immediate hazard to life or property." ECF No. 15-21 at 3. Section 91.1.112.3 makes no reference to any zoning or landmarking laws. It simply allows the County to disconnect utility services to a property if necessary to eliminate an "immediate hazard to life or property." *Id.* Plaintiffs have not adequately explained how Section 91.1.112.3 falls within RLUIPA's definition of a "land use regulation." *See Salman*, 2015 WL 5043437, at *4–5 (D. Ariz. Aug. 27, 2015) (dismissing RLUIPA claim where complaint did not "specify which Code sections Plaintiffs challenge, and the few allegations that give some information about the Code sections at issue indicate that they are not 'land use regulations' governed by RLUIPA.").

Plaintiffs argue that courts "throughout the country" have held building codes can be the basis of a RLUIPA claim when the record supports an inference that a municipal entity enforced such codes "disingenuously." ECF No. 19 at 14–15. In support, Plaintiffs cite only out-of-circuit cases and fail to adequately explain how these cases apply. Unlike in those cases, Plaintiffs have not alleged sufficient facts to establish that the County functionally utilized the Construction and Fire Code to make its zoning decisions or that the County enforced these sections disingenuously. Indeed, the County's October 16, 2023 response to Plaintiffs' counsel specifically noted that the Valley Center Property's yurts would have to be brought into conformance with the building code *regardless* of whether Plaintiffs ultimately applied for and obtained a Major Use or Minor Use Permit. *See* ECF No. 15-14 at 2.

For these reasons, the Court concludes dismissal of Plaintiffs' RLUIPA claims, to the extent these claims are based on the County's code enforcement actions, is warranted.

///

///

#### 4.    Zoning Ordinance

The Court next considers Plaintiffs' claims that the County violated RLUIPA by requiring Plaintiffs to obtain a Major Use rather than Minor Use Permit. The County contends these claims must be dismissed because they are not ripe for adjudication. ECF Nos. 16 at 13–14; 20 at 3–4. Specifically, the County argues Plaintiffs must first complete the application process for either a Major Use or Minor Use Permit before asserting these claims, citing the Ninth Circuit's decision in *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957 (9th Cir. 2011).

#### a.    Final Decision Requirement

"Article III of the Constitution empowers [courts] to adjudicate only live cases or controversies, not to issue advisory opinions [or] to declare rights in hypothetical cases." *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) (internal quotation marks omitted). "The basic rationale of the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012). "The ripeness inquiry has a constitutional component rooted in the 'case or controversy' requirement of Article III, and a prudential component that focuses on whether the record is adequate to ensure effective review." *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1171 (9th Cir. 2001).

In the land use context, the Court's analysis of ripeness is guided by the Ninth Circuit's decision in *Guatay*. In *Guatay*, a church used property located in a "rural residential" zone for religious assembly purposes, despite not having obtained the proper land use permits. 670 F.3d at 959–60. Instead, the church and property owner twice proceeded only partway through the permit application process. *Id.* at 962–64. Because the church had never completed this process, the district court found its RLUIPA claims were not ripe for review. *Id.* at 969. The Ninth Circuit affirmed. *Id.* at 979–82.

To determine whether the church's RLUIPA claims were ripe, *Guatay* drew upon the "final decision" requirement in the Supreme Court's decision in *Williamson County*

*Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985). *Guatay*, 670 F.3d at 976–79. *Williamson* held, in the regulatory takings context, that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186. Applying *Williamson*'s "final decision" requirement, *Guatay* held the church's "failure to complete even *one* full Use Permit" left the court "unable to discern whether there is a true case or controversy, and any resulting injury." 670 F.3d at 980.

As Plaintiffs note, however, the Supreme Court recently readdressed the "final decision" requirement in *Pakdel v. City & County. of San Francisco*, 594 U.S. 474 (2021). In *Pakdel*, petitioners owned a multi-unit residential building organized as a tenancy-in-common. 594 U.S. at 475. The City of San Francisco established a program by which such tenants-in-common could convert their interests into condominium-style arrangements allowing for individual ownership of certain parts of the building. *Id.* at 476. One of the conditions of this conversion was that nonoccupant owners who rented out their units were required to offer their renters a lifetime lease. *Id.* Petitioners obtained such a conversion, but thereafter requested that the City either excuse them from executing the lifetime lease or compensate them for doing so. *Id.* The City refused both requests, informing petitioners that the failure to execute the lifetime lease could result in an enforcement action. *Id.*

The Ninth Circuit held petitioners' claim was not ripe because petitioners did not comply with the proper "administrative processes" in obtaining the City's decision. *Id.* at 479. The Supreme Court reversed, holding that the "finality requirement is relatively modest. All a plaintiff must show is that there [is] no question . . . about how the regulations at issue apply to the particular land in question." *Id.* at 478. For these reasons, *Pakdel* held because the City had twice denied petitioners' request to be excused and threatened an enforcement action, there was "no question" about the City's position. *Id.* at 478–79. *Pakdel* further clarified that:

> [The] administrative exhaustion of state remedies is not a prerequisite

for a takings claim when the government has reached a conclusive position. To be sure, we have indicated that a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision. But, contrary to the Ninth Circuit's view, administrative missteps do not defeat ripeness once the government has adopted its final position.

*Id.* at 480 (internal quotation marks and citations omitted).

### b.    *Facial Versus As-Applied Challenges*

Plaintiffs argue the final decision requirement does not bar Plaintiffs' RLUIPA equal terms claim, because Plaintiffs assert both a facial and as-applied equal terms challenge to the County's zoning ordinance. ECF No. 19 at 18–18; *see* FAC ¶¶ 131–39.[2] The County does not address this argument in their Reply. *See* ECF No. 20.

"The equal terms provision [of RLUIPA] contemplates both facial and as-applied challenges." *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 604 (9th Cir. 2022). "It prohibits the government from imposing, *i.e.*, enacting, a facially discriminatory ordinance or implementing, *i.e.*, enforcing[,] a facially neutral ordinance in a discriminatory manner." *Id.* It is well established that the requirement that a "claimant must seek a final decision regarding the application of the regulation to the property at issue for the government entity charged with its implementation—does not apply to facial challenges[.]"). *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993); *see Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) ("Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation.").

Accordingly, the Court concludes the final decision rule does not bar Mr. Chu's facial equal terms challenge under RLUIPA to the County's zoning ordinance. *See Divine*

---

[2]    Plaintiffs' FAC indicates they are only asserting a facial challenge in Claim 2—for violation of the equal terms provision of RLUIPA. FAC at 22.

*Grace Yoga Ashram Inc. v. Cnty. of Yavapai*, No. CV-21-08221-PCT-DJH, 2022 WL 279577, at \*4 (D. Ariz. Jan. 31, 2022) ("Because the alleged injury under RLUIPA's equal terms provision may be present upon a facial reading of the Ordinance, it would not matter whether Plaintiff applied for the [conditional use permit.]"); *Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, No. EDCV16259PSGDTBX, 2017 WL 11631506, at \*6 (C.D. Cal. Apr. 18, 2017) ("The final-decision rule does not present a barrier to adjudicating [plaintiff's] causes of action, all of which assert facial challenges to the ordinance provisions in question.").

### c.    Conclusive Determination

The Court next turns to Plaintiffs' as-applied claims. Under *Guatay* and *Pakdel*, the question before the Court is whether the County reached a "conclusive position" as to "how the regulations at issue apply to the particular land in question." *Pakdel,* 594 U.S. at 478, 480; *see Gethsemani Baptist Church v. City of San Luis,* No. CV-24-00534-PHX-GMS, 2024 WL 4870509, at \*5 (D. Ariz. Nov. 22, 2024) ("[T]he question for this Court in determining whether Plaintiffs' claim is ripe is whether there is any uncertainty about how the City Code applies" to the property in question); *Athey Creek Christian Fellowship v. Clackamas Cnty.*, No. 3:22-CV-01717-YY, 2024 WL 3596969, at \*9 (D. Or. July 30, 2024) ("*Guatay Christian* remains controlling law to the extent that it requires a plaintiff asserting [a] RLUIPA claim to show that there has been a final decision, though only de facto finality is required in that a plaintiff must show there is no question as to how the regulations apply to its property."); *see also Catholic Healthcare Int'l, Inc. v. Genoa Charter Twp.*, 82 F.4th 442, 448 (6th Cir. 2023) ("[I]n land-use cases, the necessary event is simply that the government has adopted a definitive position as to how the regulations at issue apply to the particular land in question.") (internal quotation marks omitted).

The County argues it could not yet have "clearly taken" a position on whether the Plaintiffs' proposed usage of the Valley Center Property would require a Major Use or Minor Use Permit as Plaintiffs failed to submit a complete application. ECF No. 20 at 9. The Court agrees. Based on Plaintiffs' FAC and accompanying exhibits, it does not appear

Plaintiffs ever filled a complete application for a land use permit or that the County had the opportunity to fully consider Plaintiffs' proposal to determine whether their request for a Minor Use Permit would be feasible. *See Ralston v. Cnty. of San Mateo,* No. 21-CV-01880-EMC, 2021 WL 3810269, at *7 (N.D. Cal. Aug. 26, 2021)*, aff'd,* No. 21-16489, 2022 WL 16570800 (9th Cir. Nov. 1, 2022) ("Plaintiffs do not cite a single analogous case where a court concluded that a state agency reached a 'final decision' before the landowner even applied for a permit or submitted a substantive proposal to develop the property.").

Plaintiffs argue the County has already taken a "final position" on Plaintiffs' permit application, citing the County's review of materials submitted in connection with Plaintiffs' "pre-application." ECF No. 19 at 19. The Court disagrees. Under *Pakdel,* "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." 594 U.S. at 480. The County's October 16, 2023 response to Plaintiffs' counsel provided that if plaintiff Chu's "planned use" of the Valley Center Property was for fewer that fifty people and no individuals would be "taking up residence in the yurts," the County would "consider" a Minor Use Permit. ECF No. 15-14 at 2. The County's letter dated May 28, 2024, stated that Plaintiffs could request a second opinion from the County's Chief of Project Planning and Chief of Land Development regarding the County's initial determination that the Plaintiffs' project would require a Major Use Permit. ECF No. 15-16 at 4. These preliminary statements do not constitute a "final determination." *See Lustig v. City of Laguna Beach,* No. 8:22-CV-01945-DOC-ADS, 2023 WL 6370231, at *5 (C.D. Cal. Aug. 10, 2023) (letter stating project "would appear to be . . . infeasible" was only "a preliminary review" and not a final determination); *Ralston,* 2021 WL 3810269, at *6 (preliminary statements by County's planning director did not constitute a "final decision"). Plaintiffs have not sufficiently demonstrated why the County may not clarify or even change its position.

///

///

Here, as in *Guatay*, Plaintiffs have "presented no evidence that the County will not or cannot issue a Use Permit once it has received a complete application, and once [Plaintiffs have] complied with what is required of all applicants." *Guatay*, 670 F.3d at 981–82; *see Little Woods Mobile Villa LLC v. City of Petaluma*, 736 F. Supp. 3d 757, 766 (N.D. Cal. 2024) ("After *Pakdel*, the finality requirement is modest, but it is still a finality requirement: where there has been no decision at all from the government and no effort to seek one, Plaintiffs' claims cannot be ripe.") (internal quotation marks omitted); *DiVittorio v. Cnty. of Santa Clara*, No. 21-CV-03501-BLF, 2022 WL 409699, at *7 (N.D. Cal. Feb. 10, 2022) (finding that regulatory takings claim was not ripe where plaintiffs "elected to sue in the middle of the administrative process when avenues still remain for the government to render a decision favorable to them") (internal quotation marks omitted).

For these reasons, the Court concludes dismissal of Plaintiffs' RLUIPA claims is warranted, to the extent those claims are as-applied challenges to the County's application of its ordinances governing Major Use and Minor Use permits to the Valley Center Property.

### d.    Plausibility of Plaintiffs' Facial Challenge

Finally, the Court considers whether Plaintiffs have demonstrated a *prima facie* case of facially unequal treatment in violation of RLUIPA. "To make out a *prima facie* case of facially unequal treatment" under RLUIPA, a plaintiff "must show that the [challenged ordinance] draws an 'express distinction' between religious assemblies and nonreligious assemblies." *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 605 (9th Cir. 2022). A defendant "violates the equal terms provision only when a [plaintiff] is treated on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria." *Centro Familiar*, 651 F.3d at 1173.

Here, Plaintiffs have plausibly alleged the County's zoning provision facially violates the equal terms provision because it permits nonreligious institutions, such as small schools and cottage industries, to operate with a Minor Use Permit, while forbidding religious institutions from doing the same. FAC ¶¶ 131–39. Specifically, Section 2700 of

the San Diego County Zoning Ordinance provides that the regulations governing the A70 Zoning District "are intended to create and preserve areas intended primarily for agricultural crop production." ECF No. 15-4 at 2. Sections 2704 and 2705 provide mechanisms for property owners to obtain a permit to operate within the A70 zone. *Id.* at 3–4. Under Section 2705, property owners who intend to use their property for, among other things, "Civic, Fraternal or Religious Assembly" must obtain a Major Use Permit. *Id.* at 4. In contrast, under Section 2704, property owners who intend to use their property for, among other things, a small school or cottage industries, may obtain a Minor Use Permit. *Id.* at 3.

Defendants contend Plaintiffs have not adequately shown that the zoning ordinance treats religious institutions differently from secular ones. ECF No. 16 at 17. Specifically, Defendant argues a "small school" or a "cottage industry" are not "equal" for land uses purposes to property intended for religious assembly. *Id.* at 18. Taking the allegations in the FAC as true, and construing all inferences in Plaintiffs' favor, the Court concludes these allegations set forth a plausible claim. *See Immanuel Baptist Church v. City of Chi.*, 344 F. Supp. 3d 978, 984 (N.D. Ill. 2018) (motion to dismiss facial equal terms challenge denied where church pleaded facts plausibly suggesting it had a secular comparator that was treated more favorably); *Redemption Cmty. Church v. City of Laurel*, 333 F. Supp. 3d 521, 532–33 (D. Md. 2018) (motion to dismiss facial equal terms challenge denied where church identified various institutions that could have constituted a similarly situated comparator that were treated more favorably).

### 5. Summary

For these reasons, the Court **DENIES** the County's motion to dismiss Plaintiffs' Claim 2, to the extent Claim 2 is asserting a facial challenge by Mr. Chu to the County's ordinances governing Major Use and Minor Use permits in the A70 Zoning District. The Court **GRANTS** the County's motion to dismiss Plaintiffs' Claims 1-3 in all other respects.

## B.    First Amendment Claims (Claims 4 and 5)

In Claims 4 and 5 of their FAC, Plaintiffs allege the County's enforcement of its

zoning ordinance violates Plaintiffs' rights under the free exercise, free speech, and free assembly clauses of the First Amendment. FAC ¶¶ 146–169. Defendants move to dismiss these claims for lack of ripeness and failure to state a claim. ECF No. 16 at 13–14, 19–22.

The First Amendment of the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . or the right of the people peaceably to assemble . . . ." U.S. Const., amend. I. It is applicable to state action by incorporation through the Fourteenth Amendment. *See L.F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 626 (9th Cir. 2020); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).

Here, based on the FAC and Plaintiffs' opposition, Plaintiffs appear to be asserting as-applied federal constitutional challenges to the County's zoning ordinance, based on the County's requirement that Plaintiffs obtain a Major Use Permit for the Valley Center Property. *See* FAC ¶¶ 149, 151–52, 159–60, 166–167; ECF No. 19 at 23 ("Plaintiffs have alleged that the County's insistence that Plaintiffs obtain a Major Use Permit to use its yurts for meditation—a 'sincere religious practice'—is inconsistent with treatment of other similar secular land uses in the same zoning district that use their property in similar matters"); 24 ("Plaintiffs' First Amended Complaint states that the County's Zoning Ordinance—A70 in particular—clearly analyzes the content of speech and purposes of assembly in determining what permit should be required for certain land uses . . . This type of analysis of the purpose of Plaintiffs' speech and assembly violates First Amendment protections.").

The Court's analysis of ripeness is again guided by *Guatay*. In *Guatay*, the Ninth Circuit held that the church had not established its first amendment claims were ripe, where the church made "no "discernible independent argument" of ripeness, but merely cited "RLUIPA and general precedent recognizing the existence of these constitutional rights, and attempt[ed] to distinguish [the final decision requirement] in *Williamson County*." 670 F.3d at 987. The church in *Guatay* did not adequately "address[] why [their] claims would

not be better suited for consideration once a final decision on the Use Permit application issues and the extent of the injury is fully defined." *Id.* Here, as in *Guatay*, Plaintiffs have offered no independent argument or legal authority as to why their First Amendment claims are ripe for adjudication. Accordingly, the Court **GRANTS** the County's motion to dismiss Claims 4 and 5 on ripeness grounds.

### C.    Due Process (Claim 6)

In Claim 6 of the FAC, Plaintiffs allege that the County violated their rights to due process under the First and Fourteenth Amendment by ordering electricity be terminated from the Valley Center Property without providing Plaintiffs prior notice and an opportunity to be heard. FAC ¶¶ 170–79.

#### 1.    Generally

"The Due Process Clause of the Fourteenth Amendment imposes procedural constraints on governmental decisions that deprive individuals of liberty or property interests." *Nozzi v. Hous. Auth.*, 806 F.3d 1178, 1190 (9th Cir. 2015). "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998).

#### 2.    Constitutionally Protected Liberty or Property Interest

The first question is whether Plaintiffs have adequately alleged a constitutionally protected liberty or property interest. "In the context of provision of electrical services, a vested right exists if plaintiff can establish a 'legitimate claim' to continued electricity." *Autotek, Inc. v. Cnty. of Sacramento*, No. 216CV01093KJMCKD, 2020 WL 4059564, at *17 (E.D. Cal. July 20, 2020) ("*Autotek II*"), *aff'd sub nom. Lull v. Cnty. of Sacramento*, No. 20-16599, 2022 WL 171938 (9th Cir. Jan. 19, 2022). "The extent, scope and conditions of a right to continuing electricity are created and defined by state and local rules, and those same rules therefore delineate when one has a claim of entitlement to continued service." *Autotek Inc. v. Cnty. of Sacramento*, No. 2:16-cv-01093-KJM-CKD, 2018 WL 836383, at *2 (E.D. Cal. Feb. 13, 2018) ("*Autotek I*").

"Where a state or local law restricts the ability of a municipal utility provider to terminate service, customers of the provider have a protected property interest in the continuation of service." *Field v. La Paz Cnty.*, No. CV-03-2214-PHX-SRB, 2006 WL 8440645, at *10 (D. Ariz. Apr. 27, 2006) (internal quotation marks omitted); *see also Frates v. Great Falls*, 568 F. Supp. 1330, 1337 (D. Mont. 1983) (A "specification of reasons, for which services may be terminated, amounts, in essence, to a recognition that termination may be for cause only, and clearly refutes the conclusion that the utility or governing body has a right to terminate services at will.").

Here, the County Construction and Fire Code indicates that the County may not terminate electricity to a property "at will." Instead, County Construction and Fire Code Section 91.1.112.3 provides a "building official may authorize disconnection of utility service to a building, structure or system regulated by this chapter in case of emergency where the building official determines *it is necessary to eliminate an immediate hazard to life or property*." ECF No. 15-21 at 3 (emphasis added). Because Plaintiffs have plausibly alleged that the County's ability to terminate utilities to the Valley Center Property was restricted, Plaintiff has alleged a plausible entitlement to a property right. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12 (1978) (respondents asserted a legitimate due process property interest in the supply of electricity where state law indicated municipal utility could not terminate electricity at will).

### 3.    The Process Due

The Court next turns to the question of "what process is due." *Brewster*, 149 F.3d at 983. Here, the County argues it satisfied constitutional due process requirements by complying with the notice requirements in the County Construction and Fire Code. ECF No. 16 at 23. Under County Construction and Fire Code Section 91.1.112.3, where a building official disconnects utilities to a property "in case of emergency" after determining doing so "is necessary to eliminate an immediate hazard to life or property," prior notice is not required. ECF No. 15-21 at 3.

///

Instead, County Construction and Fire Code Section 91.1.112.3(d) provides that:

> [T]he building official shall notify the serving utility and wherever possible the owner and occupant of the building, structure or service system of the decision to disconnect prior to taking this action. If not notified prior to disconnecting, the owner or occupant of the building, structure or service system shall be notified in writing, as soon as practicable thereafter.

*Id.* In light of the above, the County asserts that as the use of utilities at the Valley Center Property constituted an "immediate hazard to life or property," it properly complied with County Construction and Fire Code Section by providing the Plaintiff a post shut-off notice letter. ECF No. 16 at 23.

The County fails to adequately support its argument. First, "[o]nce a substantive right has been created, it is the Due Process Clause which provides the procedural minimums, and not a statute or regulation." *Nozzi*, 806 F.3d at 1192 (9th Cir. 2015). "Technical compliance with regulatory procedures does not automatically satisfy due process requirements." *Nozzi v. Hous. Auth.*, 425 F. App'x 539, 542 (9th Cir. 2011); *Field*, 2006 WL 8440645, at *11 (holding that if compliance with statutory procedure was sufficient, "the due process clause would be virtually meaningless, as it would be satisfied every time an official followed state law, regardless of whether that law afforded any process before the deprivation of a property or liberty interest").

In this case, Plaintiffs have alleged that they were denied sufficient notice and an adequate opportunity to be heard. *See Memphis Light,* 436 U.S. at 13 ("[A]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection."). In contrast, the County has failed to address how the process it afforded Plaintiffs complied with constitutional due process. *See Corbett v. Pharmacare U.S., Inc.,* 567 F. Supp. 3d 1172, 1194 (S.D. Cal. 2021) ("On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim.").

Second, if technical compliance with County Construction and Fire Code Section 91.1.112.3(d) were sufficient in this case, the propriety of the County's actions would then depend on whether the County properly cut power to the Valley Center Property in an "emergency situation" in order "to eliminate an immediate hazard to life or property." ECF No. 15-21 at 3. This argument raises a factual dispute not suitable for resolution on a motion to dismiss.

For these reasons, the Court **DENIES** the County's motion to dismiss Claim 6.

### D.    California Constitution (Claim 7)

In Claims 4 and 5 of their FAC, Plaintiffs allege that the County's enforcement of its zoning ordinance violates Plaintiffs' rights to the free exercise of religion and to freely assemble under the California Constitution. FAC ¶¶ 180–186. The Parties' arguments as to whether Plaintiffs' state constitutional claims should be dismissed are perfunctory, largely incorporating their arguments as to Plaintiffs' federal constitutional claims. ECF No. 16 at 24; ECF No. 19 at 25; ECF No. 20 at 9.

Based on the FAC and Plaintiffs' opposition, the Court construes Plaintiffs' claim as an as-applied state constitutional challenge to the County's zoning ordinance that mirrors their federal constitutional claims. *See* FAC ¶¶ 183–184; ECF No. 19 at 25. As with Plaintiffs' federal constitutional claims, Plaintiffs have offered no independent argument or legal authority as to why their state constitutional claims are ripe for adjudication. In the absence of meaningful briefing, the Court concludes Plaintiffs' state constitutional claims fail for the same reasons of ripeness. *See Vernon v. City of L.A.,* 27 F.3d 1385, 1392 (9th Cir. 1994) ("California case law suggests that analysis of a claim of the constitutional right to the free exercise of religion is generally similar under both federal and state constitutional law."); *Brunson v. Dep't of Motor Vehicles*, 72 Cal. App. 4th 1251, 1256 (1999) ("The California Supreme Court has never applied the free exercise clause of the California Constitution independent of a federal free exercise claim. Consequently, no California Supreme Court case has ever articulated a standard applicable to the free exercise clause of the California Constitution different from that applicable to the free

exercise clause of the United States Constitution."). For these reasons, the Court **GRANTS** the County's motion to dismiss Claim 7.[3]

## IV.    LEAVE TO AMEND

The Parties have not addressed whether Plaintiffs should be granted leave to amend. *See* ECF Nos. 16, 19, 20. Although Plaintiffs have already amended their complaint once, they may be able to cure the defects identified herein by further amendment. *See Knappenberger v. City of Phoenix.,* 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted). The Court **GRANTS** Plaintiffs leave to amend the claims that are dismissed herein.

## V.    CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the County's motion as follows:

### A.    RLUIPA Claims

1.    The Court **DENIES** the County's motion to dismiss Claim 2, to the extent Claim 2 is asserting a facial challenge by Mr. Chu to the County's ordinances governing Major Use and Minor Use permits in the A70 Zoning District.

---

[3]    The County requests that the Court take judicial notice of documents attached to the County's motion to dismiss. *See* ECF No. 16-1. The majority of the documents the County has attached are already included as part of Plaintiffs' FAC, and are properly subject to judicial notice. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment."). The remainder of the documents—including photos of Valley Center Property—are immaterial to the Court's decision. *Jones v. Best Serv. Co.*, No. CV 14-9872 SS, 2017 WL 490902, at *5 (C.D. Cal. Feb. 6, 2017), *aff'd,* 700 F. App'x 580 (9th Cir. 2017) (denying request for judicial notice as unnecessary where documents were immaterial to the Court's decision). For these reasons, the Court **GRANTS** the request as to the attachments to the FAC and **DENIES** it in all other respects.

2.      The Court **GRANTS** the County's motion to dismiss Claims 1-3 in all other respects.

**B.      Federal Constitutional Claims**

3.      The Court **GRANTS** the County's motion to dismiss Claim 4-5**.**

4.      The Court **DENIES** the County's motion to dismiss Claim 6.

**C.      State Constitutional Claim**

5.      The Court **GRANTS** the County's motion to dismiss Claim 7.

6.      If Plaintiffs choose to file a Second Amended Complaint, Plaintiffs must do so within **fourteen (14) days** of the date of this Order. The County's time to respond to the operative pleading will begin to run on the earlier of the date Plaintiffs file a Second Amended Complaint or **fourteen (14) days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: February 24, 2025

_____
Hon. Robert S. Huie
United States District Judge

23