UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMANA FOREST RETREAT, et al.,<br><br>                                   Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br><br>                                   Defendant. | Case No.:  24-cv-1196-RSH-DDL<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[ECF No. 23] |

Before the Court is the County of San Diego's ("the County's") motion to dismiss Plaintiffs' Second Amended Complaint (ECF No. 22, "SAC"). ECF No. 23. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants the motion.

## I.    BACKGROUND

### A.    Plaintiffs' Allegations

The instant case arises from the County's permitting and code enforcement actions taken in relation to property Plaintiffs intended for religious use. The SAC alleges as

follows.[1]

### 1. The Valley Center Property

Plaintiff William Chu is a professor of Buddhist studies and ordained Buddhist minister. SAC ¶¶ 9–10. Plaintiff Sumana Forest Retreat ("SFR") is a nonprofit Buddhist religious organization. *Id.* ¶ 12. SFR practices and teaches Forest Tradition Theravada Buddhism, a faith centered on meditation in secluded, remote forest settings. *Id.* ¶¶ 21–23. Chu is the leader and founding minister of SFR. *Id.* ¶¶ 10, 14.

In 2018, Chu purchased a 9.9-acre property located at 11923 Via Campestre, Valley Center, California (the "Valley Center Property"). *Id.* ¶ 14. SFR leases the Valley Center Property from Chu. *Id.* ¶ 16. Shortly after purchase, Plaintiffs began to prepare the property to host meditative retreats. *Id.* ¶ 26. To that end, between 2018 and 2019, Plaintiffs built ten yurts to serve as places for retreatants to meditate and rest. *Id.* ¶¶ 29, 65.[2]

### 2. Major and Minor Use Permits

The Valley Center Property is located in the A70 Zoning District of San Diego County—a Limited Agricultural Use District. *Id.* ¶ 33–34. Land use permits are required to use property within the A70 District in certain ways. *Id.* ¶¶ 36–62. Of relevance to the dispute, under the County's zoning ordinance, property owners do not need a permit to use property for "essential services"—which include "public passive parks and recreational areas." SAC ¶¶ 37–38; ECF Nos. 22-4 at 2; 22-5 at 2; 22-6 at 2. In contrast, property owners must obtain a "Minor Use Permit" for "small schools, farm labor camps, and cottage industries." SAC ¶ 44; ECF No. 22-4 at 3. Finally, property owners must obtain a "Major

---

[1] The facts as alleged in this case were set forth in the Court's prior February 24, 2025 order on the County's Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 21 at 1–5. For completeness, the Court repeats this background and supplements with relevant additional allegations set forth in Plaintiffs' SAC.

[2] The County disagrees that the structures are properly described as "yurts," arguing that that term indicates a simple cloth structure, but that the structures at issue have kitchens, plumbing, and utilities. ECF No. 16 at 2.

Use Permit" to use land for, among other purposes, "religious assembly." SAC ¶¶ 54, 179; ECF No. 22-4 at 4. Major Use Permit applications require approval by the County Board of Supervisors or Planning Commission. SAC ¶ 60; ECF No. 22-8 at 2. In contrast, Minor Use Permits may be approved by the Director of Planning & Development Services. SAC ¶ 61; ECF No. 22-8 at 2. Applying for a Major Use Permit may also require additional costs. SAC ¶ 62.

### 3. *Permit Pre-Application*

In 2018, Chu began the process of applying for a land use permit. *Id.* ¶ 63. In January 2021, Chu submitted a Major Use pre-application. SAC ¶ 70; ECF No. 22-20 at 2. On February 1, 2021, the County informed Plaintiffs it would review their permit application. SAC ¶ 71. However, Plaintiffs did not hear anything from the County regarding their pre-application in the following two years. *Id.* ¶ 72. During the same time period, in May 2021, January 2022, and January 2023, Brandy Contreras, a Land Use/Environmental Planner in the County's Code Compliance Division, randomly conducted inspections of the Valley Center Property. *Id.* ¶ 73.

Chu and other SFR members eventually met with County officials to discuss Plaintiffs' application. *Id.* ¶ 75. The SAC alleges that over the course of two meetings, County Officials informed Chu and other SFR members that the County would never approve Plaintiffs' application because of the yurts erected on the Valley Center Property. *Id.* ¶¶ 76–77.

### 4. *Plaintiffs Retain Counsel*

Plaintiffs subsequently sought and retained counsel. SAC ¶ 85. In a July 6, 2023 letter, Plaintiffs' counsel advised the County that the zoning ordinance placed a substantial burden on Plaintiffs' religious exercise by requiring them to obtain a Major Use Permit. ECF No. 22-16. The letter set forth Plaintiffs' intent to bring a federal lawsuit if the Parties were "unable to come to an agreement on a Minor Use Permit." *Id.* at 2.

On October 16, 2023, the County responded that the Valley Center Property's "yurts in their current condition present serious concerns related to fire safety, structural integrity,

and environmental hazards." ECF No. 22-17 at 2. The County's response further stated:

> The future use of the property will need to match the permit for which Dr. Chu and the Sumana Forest Refuge apply. If the planned use is fewer than 50 people meditating and exploring Buddhism, without taking up residence in the yurts, the County would consider a minor use permit, as it would for the arguably analogous use case of a small school. However, if transient habitation is to be a use, whether primary or accessory, a major use permit is required to ensure the resulting health, safety, and environmental concerns are adequately examined.

*Id.* at 2. Finally, the County cautioned Plaintiffs that "[r]egardless of the permit ultimately applied for and obtained," the Valley Center Property yurts had to "be brought into conformance with the building code." *Id.* Although the letter recognized that this could be "impractical with the existing yurts," it noted the County's willingness to "explore options" with Chu and SFR as to how to do so. *Id.* at 2–3.

On December 1, 2023, Plaintiffs' counsel responded that Plaintiffs' planned use of the property would be for less than 50 persons and reasserted their position Plaintiffs should be permitted to apply for a Minor Use Permit and maintain yurts on their property ECF No. 22-18 at 2–3.

     5.    *Application for Initial Consultation*

Thereafter, Plaintiffs filed an application for a meeting with the County, known as an initial consultation. ECF No. 22-20 at 2. In a letter dated May 28, 2024, the County informed Plaintiffs it had reviewed Plaintiffs' initial consultation application. ECF No. 22-19 at 2. Based on the project description submitted with Plaintiffs' application, the County's Planning & Development Services Department concluded that Plaintiffs' project required a Major Use Permit. *Id*. at 3. The letter indicated that Plaintiffs could seek a second opinion from the County's Chief of Project Planning and Chief of Land Development. *Id*. at 4.

     6.    *Termination of Power*

In early 2024, plaintiff Chu consented to have Ms. Contreras and other County officials inspect the Valley Center Property. SAC ¶ 95. Thereafter, on March 31, 2024, he

4

received a Notice from the County's Department of Environmental Health and Quality Division indicating that graywater was "being illegally discharged onto the ground" at the property. SAC ¶ 100; ECF No. 22-20 at 2. The Notice stated that at the time of the inspection, officials observed ten yurts and several "accessory structures." ECF No. 22-20 at 2. Most of the yurts had "electrical, gas plumbing, and water plumbing." *Id.* Wastewater discharge pipes "were observed from all plumbed yurts" and portable restrooms "were also observed on property," despite there being "no approved means of wastewater treatment/disposal on the property." *Id.*

On June 7, 2024, San Diego Gas & Electric ("SDG&E") terminated power to the Valley Center Property. SAC ¶ 104. In a letter received by Chu several days later, SDG&E informed Chu it had received notification from the County that the "electrical and gas services" at the Valley Center Property presented "an immediate hazard to life and property" and that SDG&E could not reconnect power until authorized in writing to do so by the County. SAC ¶ 108; ECF No. 22-22 at 2. As of the date of the SAC, SDG&E had not reconnected power to the property. SAC ¶ 125.

### B. Procedural Background

On July 11, 2024, Plaintiffs filed the instant action against the County. ECF No. 1. On July 12, 2024, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. ECF No. 4. The Court held a hearing on Plaintiffs' motion on July 18, 2024, and denied it without prejudice. ECF No. 8.

On September 9, 2024, Plaintiffs filed their First Amended Complaint. ECF No. 15. The FAC asserted seven claims: (1) a Religious Land Use and Institutionalized Persons Act ("RLUIPA") substantial burden claim; (2) a RLUIPA equal terms claim; (3) a RLUIPA nondiscrimination claim; (4) a claim for violation of the First Amendment's right to free exercise of religion; (5) a claim for violation of the First Amendment's right to free speech and assembly; (6) a claim for violation of due process under the First and Fourteenth Amendments; and (7) a claim for violation of free exercise and freedom of association under the California Constitution. FAC ¶¶ 111–186. On September 30, 2024, the County

1  filed a motion to dismiss Plaintiffs' First Amended Complaint. ECF No. 16. Plaintiffs filed
2  an opposition and the County filed a reply. ECF Nos. 19; 20.
3        On February 24, 2025, the Court granted in part and denied in part the County's
4  motion. *See* ECF No. 21. Specifically, the Court denied the County's motion to dismiss
5  Plaintiffs' RLUIPA equal terms claim, to the extent Plaintiffs were asserting a facial
6  challenge to the County's ordinances governing Major Use and Minor Use permits. *Id.* at
7  22. The Court granted the County's motion to dismiss Plaintiffs' RLUIPA claims in all
8  other respects. *Id.* Additionally, the Court granted the County's motion to dismiss
9  Plaintiffs' claims for violation of free exercise and free speech under the First Amendment
10 but denied the County's motion to dismiss Plaintiffs' due process claim. *Id.* at 23. Finally,
11 the Court granted the County's motion to dismiss Plaintiffs' claims for violations of the
12 California Constitution. *Id.*
13       On March 10, 2025, Plaintiffs filed their SAC. The SAC asserts the same seven
14 claims asserted in Plaintiffs' FAC. SAC ¶¶ 139–253. On March 24, 2025, the County filed
15 the instant motion to dismiss Plaintiffs' SAC. ECF No. 23. Plaintiffs filed an opposition,
16 and the County filed a reply. ECF Nos. 26; 28.

17 **II.  LEGAL STANDARD**

18       A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."
19 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a
20 complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief
21 that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.
22 Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,'
23 and reasonable inferences from that content, must be plausibly suggestive of a claim
24 entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).
25 The plausibility review is a "context-specific task that requires the reviewing court to draw
26 on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts
27 "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to
28 relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## III.   ANALYSIS

### A.   RLUIPLA (Claims 1-3)

Plaintiffs' RLUIPA claims are based on two general categories of County actions: (1) the County's handling of Plaintiffs' pre-application for a land use permit; and (2) the County's enforcement of its building codes to terminate electricity and gas to the Valley Center Property. SAC ¶¶ 139–98.

In its February 24, 2025 Order, the Court dismissed Plaintiffs' RLUIPA claims to the extent they were based on the County's building code. ECF No. 21 at 8–9. As Plaintiffs had not specified what sections of the building code they alleged were "land use regulations" under RLUIPA, the Court inferred Plaintiffs were challenging the County's termination of electric and gas to the Valley Center Property under County Construction and Fire Code Section 91.1.112.3. *Id.* at 9. The Court concluded dismissal of these claims was appropriate as: (1) Plaintiffs had not adequately explained how provisions of the County's fire code were "land use regulations" under RLUIPA; and (2) Plaintiffs had not alleged sufficient facts to establish that the County had "disingenuously" used the fire code to make its zoning decisions. *Id.* The Court also dismissed Plaintiffs' as-applied claims that the Country violated RLUIPA by requiring Plaintiffs to obtain a Major Use Permit. *Id.* at 13–15. Specifically, the Court held Plaintiffs' as-applied claims were barred by RLUIPA's final decision requirement, as Plaintiffs had not yet submitted a complete permit application. *Id.*

///

The Parties dispute whether the newly raised allegations in Plaintiffs' SAC have adequately cured the above deficiencies. *See* ECF Nos. 23-1 at 4–5; 26 at 8–12; 28 at 2–4. The Court addresses this dispute below.

### 1.  Building Codes

The Court turns first to Plaintiffs' claim the County utilized "inapplicable building and fire codes" to prevent Plaintiffs' religious exercise. SAC ¶ 130.[3]

Under RLUIPA, a "land use regulation" is "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land)[.]" 42 U.S.C.S. § 2000cc-5(5); *see Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002) ("[A] government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest."). Multiple courts in the Ninth Circuit have held that "[s]afety laws such as building or construction code provisions do not qualify as 'land use regulations' under RLUIPA, at least where they do not explicitly reference zoning laws." *Temp. of 1001 Buddhas v. City of Fremont*, 588 F. Supp. 3d 1010, 1027 (N.D. Cal. 2022); *see Salman v. Phoenix, City of*, No. CV-12-01219-PHX-JAT, 2015 WL 5043437, at *4 (D. Ariz. Aug. 27, 2015) (code sections that regulate "construction, safety, and traffic" are not land use regulations); *Anselmo v. Cty. of Shasta*, 873 F. Supp. 2d 1247, 1257 (E.D. Cal. 2012) (building and construction code that prohibited construction without a permit and did not reference zoning laws was not a "land use regulation.").

Here, Plaintiffs do not contend that the County's fire code, by its own terms, constitutes a zoning or landmarking law under RLUIPA. *See* ECF No. 26. Instead,

---

[3]  Like in their SAC, Plaintiffs do not identify the specific "building code" sections they claim fall under the scope of the RLUIPA. *See* SAC; ECF No. 26. For the sake of argument, the Court will again infer Plaintiffs are challenging the County's termination of power to the Valley Center Property under County Construction and Fire Code Section 91.1.112.3.

Plaintiffs argue the County enforced the fire code "disingenuously" as a vehicle to make a zoning decision, thereby making the code subject to RLUIPA. *Id.* at 10. As the Court already outlined in its prior February 24, 2025 Order, this argument is unpersuasive.

Plaintiffs cite only out-of-circuit cases in support of their argument. *Id.* Even if these cases were binding, they are inapposite to the facts alleged here. In *Fortress Bible Church v. Feiner*, 694 F.3d 208, 212 (2d Cir. 2012), plaintiffs asserted a RLUIPA claim against town officials over plans to construct a structure to house a worship facility and school. The Church's proposal triggered a state environmental review process. *Id.* at 213. The court held that while the environmental review process was not itself "a zoning or landmarking law for purposes of RLUIPA . . . when a government uses a statutory environmental review process as the primary vehicle for making zoning decisions, those decisions constitute the application of a zoning law and are within the purview of RLUIPA." *Id.* at 216. In doing so, the court was careful to note "that ordinary environmental review considerations" are not subject to RLUIPA. *Id.* at 218. Instead, the state environmental review process implicated RLUIPA because: (1) the process had been triggered when the Church's project required discretionary approvals from the Town which related "to zoning and land use rather than traditional environmental concerns"; (2) the Town had "intertwined" the environmental review process "with its zoning regulations"; and (3) once the review process was underway, the Town "focused on zoning issues rather than traditional environmental issues." *Id.* at 217–18.

In contrast, unlike in *Fortress Bible*, there is no evidence that the County "intertwined" its fire code with its zoning regulations to such an extent that the fire code became the County's instrument for making zoning decisions. Under County Construction and Fire Code Section 91.1.112.3, a "building official may authorize disconnection of utility service to a building, structure or system regulated by this chapter in case of emergency where the building official determines it is necessary to eliminate an immediate hazard to life or property." ECF No. 22-25 at 2. Section 91.1.112.3 makes no reference to any zoning or landmarking laws. It simply allows the County to disconnect utility services

to a property if necessary to eliminate an "immediate hazard to life or property." *Id.* Plaintiffs also do not plausibly allege the County's enforcement of its fire code was triggered by Plaintiffs' application for a land use permit. Unlike in *Fortress Bible*, where plaintiffs request for land use approvals automatically triggered the state's environmental review process, there are no analogous allegations here. Finally, Plaintiffs do not plausibly allege that the County focused on zoning issues when enforcing its fire code. Indeed, the County's October 16, 2023 letter specifically noted the County's position that the Valley Center Property's yurts would have to be brought into conformance with the building code *regardless* of whether Plaintiffs ultimately applied for and obtained a Major Use or Minor Use Permit. See ECF No. 22-17 at 2.[4]

Plaintiffs do not explain how the additional allegations in their SAC have cured these deficiencies. *See Ortiz v. Pacific*, 973 F. Supp. 2d 1162, 1185 (E.D. Cal. 2013) ("It is not the Court's role to make arguments for any party."). The SAC's newly asserted allegations—that the County's fire code is not applicable to the yurts built on the Valley Center Property and Plaintiffs' contractors reported that the issues identified by the County were only "minor" in nature—does not transform the fire code into the County's "primary

---

[4] The other cases Plaintiffs cite are similarly distinguishable. In *United States v. Cnty. of Culpeper*, 245 F. Supp. 3d 758, 762, 766 (W.D. Va. 2017), defendant contended a "pump-and-haul permit"—used for when municipal sewers cannot service a property and the local soil cannot effectively support a septic system—was a public health and not a zoning law. In that case, however, binding authority supported the court's holding that water and sewer regulations were construed as "zoning laws" under RLUIPA. *Id.* at 767. Plaintiffs have not presented similarly binding authority from the Ninth Circuit that fire code provisions or any of the other County building codes are properly considered "zoning laws" under RLUIPA.

In *Layman Lessons, Inc. v. City of Millersville*, 636 F. Supp. 2d 620, 645–46 (M.D. Tenn. 2008), the court considered whether a proposed ordinance that had never actually been enacted could constitute a "land use" regulation under RLUIPA. The court held defendants' attempted imposition of the proposed ordinance could fall under the RLUIPA. *Id.* Plaintiffs have not explained—and the Court is unable to determine—how the *Layman Lessons* case is applicable here.

vehicle for making zoning decisions." *Fortress Bible Church*, 694 F.3d at 216. As Plaintiffs themselves note, property owners must obtain a "Major Use Permit" to use land in the A70 Zoning District for "religious assembly." SAC ¶¶ 54, 179. Even if the fire code did not apply or Plaintiffs could easily remedy any violations, the requirement that property owners obtain a land use permit would remain.

For these reasons, the Court grants the County's motion to dismiss Plaintiffs' RLIUPA claims, to the extent these claims are based on the County's code enforcement actions.

### 2. Zoning Ordinance

The Court next considers Plaintiffs' claims that the County violated RLUIPA by requiring Plaintiffs to obtain a Major Use permit.

"Article III of the Constitution empowers [courts] to adjudicate only live cases or controversies, not to issue advisory opinions [or] to declare rights in hypothetical cases." *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) (internal quotation marks omitted). "The basic rationale of the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012). "The ripeness inquiry has a constitutional component rooted in the 'case or controversy' requirement of Article III, and a prudential component that focuses on whether the record is adequate to ensure effective review." *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1171 (9th Cir. 2001).

In a land use context, the Court's analysis of ripeness is guided by the Ninth Circuit's decision in *Guatay*. In *Guatay*, a church used property located in a "rural residential" zone for religious assembly purposes, despite not having obtained the proper land use permits. 670 F.3d at 959–60. Instead, the church and property owner twice proceeded only partway through the permit application process. *Id.* at 962–64. Because the church had never completed this process, the district court found its RLUIPA claims were not ripe for review. *Id.* at 969. The Ninth Circuit affirmed the district court's decision. *Id.* at 979–82.

To determine whether the church's RLUIPA claims were ripe, *Guatay* drew upon the "final decision" requirement in the Supreme Court's *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985) decision. *Id.* at 976–79. *Williamson* held, in the regulatory takings context, that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186. Applying *Williamson*'s "final decision" requirement, *Guatay* held the church's "failure to complete even *one* full Use Permit" left the court "unable to discern whether there is a true case or controversy, and any resulting injury." 670 F.3d at 980.

The Supreme Court recently clarified the "final decision" requirement in *Pakdel v. City & Cty. of S.F.*, 594 U.S. 474 (2021). In *Pakdel*, petitioners owned a multi-unit residential building organized as a tenancy-in-common. 594 U.S. at 475. The City of San Francisco established a program by which such tenancy-in-common owners could convert their interests into condominium-style arrangements allowing for individual ownership of certain parts of the building. *Id.* at 476. One of the conditions of this conversion was that nonoccupant owners who rented out their units were required to offer their tenants a lifetime lease. *Id.* Petitioners obtained such a conversion, but then requested a few months later that the City either excuse them from executing the lifetime lease or compensate them for doing so. *Id.* The City refused both requests, informing petitioners that the failure to execute the lifetime lease could result in an enforcement action. *Id.*

The Ninth Circuit held petitioners' claim was not ripe because petitioners did not comply with the proper "administrative processes" in obtaining the City's decision. *Id.* at 479. The Supreme Court reversed, holding that the "finality requirement is relatively modest. All a plaintiff must show is that there [is] no question . . . about how the regulations at issue apply to the particular land in question." *Id.* at 478. For these reasons, *Pakdel* held because the City had twice denied petitioners' request to be excused and threatened an enforcement action, there was "no question" about the City's position. *Id.* at 478–79.

*Pakdel* further clarified that:

> [The] administrative exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position. To be sure, we have indicated that a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision. But, contrary to the Ninth Circuit's view, administrative missteps do not defeat ripeness once the government has adopted its final position.

*Id.* at 480 (internal quotation marks and citations omitted).

Here, Plaintiffs contend that the allegations in their SAC "make clear" that the County arrived at a definitive decision on Plaintiffs' permit application. ECF No. 26 at 12. In particular, Plaintiffs point to their allegations Chu and other SFR members met twice with County officials, who reportedly stated that Plaintiffs' permit applications would be "futile" due to the presence of yurts on the Valley Center Property. *Id.*

These allegations are not new and were already considered by the Court in its decision on the County's motion to dismiss Plaintiffs' SAC. *See* ECF No. 27 ¶¶ 76–77. As the Court held in that Order, under *Pakdel*, "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision." 594 U.S. at 480. Here, the record does not support Plaintiffs' position that there are no avenues for the County to clarify or change its preliminary determinations on Plaintiffs' permit application. *See* ECF No. 22-17 at 2 (October 16, 2023 letter from the County indicating if the planned use of the Valley Center Property was for fewer than fifty people meditating without "taking up residence in the yurts, the County would consider a minor use permit[.]"); 22-19 at 4 (May 28, 2024 letter from County indicating Plaintiffs could request a second opinion from the County's Chief of Project Planning and Chief of Land Development regarding the County's initial determination that the Plaintiffs' project would require a Major Use Permit); SAC ¶ 167 (alleging County has ability to grant Plaintiffs temporary structure or temporary occupancy permits). As in *Guatay*, Plaintiffs have "presented no evidence that the County will not or

cannot issue a Use Permit once it has received a complete application, and once [Plaintiffs have] complied with what is required of all applicants." *Guatay*, 670 F.3d at 981–82; *see Little Woods Mobile Villa LLC v. City of Petaluma*, 736 F. Supp. 3d 757, 766 (N.D. Cal. 2024) ("After *Pakdel*, the finality requirement is modest, but it is still a finality requirement: where there has been no decision at all from the government and no effort to seek one, Plaintiffs' claims cannot be ripe.") (internal quotation marks omitted); *DiVittorio v. Cnty. of Santa Clara*, No. 21-CV-03501-BLF, 2022 WL 409699, at *7 (N.D. Cal. Feb. 10, 2022) (finding that regulatory takings claim was not ripe where plaintiffs "elected to sue in the middle of the administrative process when avenues still remain for the government to render a decision favorable to them") (internal quotation marks omitted); *Davis v. City of Selma*, No. 1:12-CV-01362-AWI, 2013 WL 3354443, at *5 (E.D. Cal. July 3, 2013) ("[A] final decision at a local level may provide the plaintiff's relief without requiring the court to engage in unnecessary constitutional analysis, and it accords with principles of federalism by allowing local disputes to be resolved at a local level.").

Plaintiffs' newly raised argument that the County has made at least a definitive determination they must obtain *some* type of permit is also without merit. ECF No. 26 at 12. In support, Plaintiffs allege that they would not need a permit if they were to use their property as a "public passive park." SAC ¶¶ 37–38, 153. As the County notes, however, there is no evidence Plaintiffs *ever* proposed to the County that they intended to use the Valley Center Property as a "public passive park" and did not need a permit. Instead, it has been Plaintiffs' position that they should be allowed to apply for and obtain a Minor Use Permit. *See* ECF No. 22-16 at 6 ("My clients ask only that they be permitted to apply for and obtain a Minor Use Permit to use the Property for their religious exercise, including but not limited to the use of yurts on the Property.").

For these reasons, the Court concludes dismissal is appropriate as to Plaintiffs'

RLUIPA claims on ripeness grounds.[5]

### B. First Amendment Claims (Claims 4 and 5)

The Court next turns to Plaintiffs' claim that the County's enforcement of its zoning ordinance violates their rights under the free exercise, free speech, and free assembly clauses of the First Amendment. SAC ¶¶ 199–236. In its February 24, 2025 Order, the Court previously dismissed Plaintiffs' First Amendment claims on ripeness ground under *Guatay*. ECF No. 21 at 16–18. In *Guatay*, the Ninth Circuit held that the church had not established its first amendment claims were ripe, where the church made "no "discernible independent argument" of ripeness, but merely cited "RLUIPA and general precedent recognizing the existence of these constitutional rights, and attempt[ed] to distinguish [the final decision requirement] in *Williamson County*." 670 F.3d at 987. Notably, the church in *Guatay* did not adequately "address[] why [their] claims would not be better suited for consideration once a final decision on the Use Permit application issues and the extent of the injury is fully defined." *Id*.

Here, again, Plaintiffs have offered no independent argument or legal authority as to why their First Amendment claims are ripe for adjudication. *See* ECF No. 26 at 12–13. Instead, Plaintiffs repeat their argument that the County arrived at a final decision—an argument the Court has rejected above. *See id.* For these reasons, the Court **GRANTS** the County's motion to dismiss Claims 4 and 5 on ripeness grounds.

### C. California Constitution (Claim 7)

Lastly, the Court turns to Plaintiffs' claim the County's enforcement of its zoning ordinance violates Plaintiffs' rights to the free exercise of religion and to freely assemble

---

[5] As before, the Court's decision excludes Plaintiffs' facial equal terms challenge to the County's zoning ordinance. *See* ECF No. 21 at 12–13, 22. As the Court noted in its earlier Order, "[f]acial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation." *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003).

under the California Constitution. SAC ¶¶ 247–253. The Court previously dismissed this claim for lack of ripeness as Plaintiffs offered no independent or legal authority as to why their state constitutional claim was ripe for adjudication. ECF No. 21 at 21–22. Plaintiffs' state law claim fails for the same reasons here. *See* ECF No. 26 at 14. For these reasons, the Court **GRANTS** the County's motion to dismiss Claim 7.

## IV.  LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the "liberality in granting leave to amend is subject to several limitations." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Here, the Court already provided Plaintiffs an opportunity to amend their pleading. As Plaintiffs have not been able to cure the deficiencies previously identified in the Court's prior Order, the Court finds further amendment would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding plaintiff's failure to correct deficiencies in its second amended complaint was a "strong indication" that plaintiff had "no additional facts to plead.") (internal quotation marks omitted).

## V.  CONCLUSION

For the above reasons, the Court **GRANTS** the County's motion to dismiss as follows:

1. The Court **GRANTS** the County's motion to dismiss Claims 1-3, excluding Plaintiffs' facial challenge to the County's ordinance governing the land use permits in the A70 Zoning District **WITHOUT LEAVE TO AMEND.**

///
///
///

2. The Court further **GRANTS** the County's motion to dismiss Claim 4-5 and 7 **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: May 5, 2025

*Robert S. Huie*
Hon. Robert S. Huie
United States District Judge