UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMANA FOREST RETREAT, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                                    Defendants. | Case No.:  24-cv-1196-RSH-DDL<br><br>**ORDER ON DEFENDANT THE COUNTY OF SAN DIEGO'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>[ECF No. 62] |

Before the Court is the County of San Diego's ("the County's") motion to dismiss Plaintiffs' Third Amended Complaint (ECF No. 52, "TAC"). ECF No. 62. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I.    BACKGROUND

### A.    Plaintiffs' Allegations

The instant action arises from Defendants' permitting and code enforcement actions taken with respect to property Plaintiffs purchased intending for religious use. The TAC

24-cv-1196-RSH-DDL

alleges as follows.[1]

### 1.    *The Valley Center Property*

Plaintiff William Chu is a professor of Buddhist studies and an ordained Buddhist minister. TAC ¶¶ 10–11. Plaintiff Sumana Forest Retreat ("SFR") is a nonprofit Buddhist religious organization. *Id.* ¶ 13. SFR practices and teaches Forest Tradition Theravada Buddhism, a faith centered on meditation in secluded, remote forest settings. *Id.* ¶¶ 23–25. Dr. Chu is the leader and founding minister of SFR. *Id.* ¶¶ 11, 16. In 2018, Dr. Chu purchased a 9.9-acre property located at 11923 Via Campestre, Valley Center, California (the "Valley Center Property"). *Id.* ¶ 16. SFR leases the Valley Center Property from Dr. Chu. *Id.* ¶ 18. Shortly after purchasing the property, Plaintiffs began preparing to host meditative retreats. *Id*. ¶ 28. To that end, between 2018 and 2019, Plaintiffs constructed ten yurts for retreatants to meditate and rest. *Id*. ¶¶ 31, 68.

### 2.    *Major and Minor Use Permits*

The Valley Center Property is located in the A70 Zoning District of San Diego County—a Limited Agricultural Use District. *Id.* ¶¶ 35–36. Within the A70 District, a land use permit is required for certain uses of property. *Id*. ¶¶ 39–65.

Specifically, under the County's zoning ordinance, property owners do not need a permit to use property for "essential services"—which include "public passive parks and recreational areas." *Id.* ¶¶ 40–41. In contrast, property owners must obtain a "Minor Use Permit" for "small schools, farm labor camps, and cottage industries" and  a "Major Use Permit" to use land for, among other purposes, "religious assembly." *Id.* ¶¶ 47, 57; ECF No. 52-5 at 3–4. Major Use Permit applications must be approved by the County Board of Supervisors or Planning Commission. TAC ¶ 63. In contrast, Minor Use Permits may be

---

[1] The facts as alleged in this case were set forth in the Court's prior February 24, 2025 and May 5, 2025 Orders on the County's Motion to Dismiss Plaintiffs' First Amended and Second Amended Complaint, respectively. ECF Nos. 21, 29. For completeness, the Court repeats this background and supplements it with relevant allegations set forth in Plaintiffs' TAC.

approved by the Director of Planning & Development Services. TAC ¶ 64; ECF No. 52-11 at 2. Applying for a Major Use Permit may also entail additional costs. TAC ¶ 65.

### 3.     Permit Pre-Application

In 2019, Dr. Chu began the process of applying for a land use permit. *Id.* ¶ 66. In 2020, defendant Brandy Contreras, a Land Use/Environmental Planner in the County's Code Compliance Division, allegedly entered the Valley Center Property on three separate occasions and photographed the property extensively without notice or consent. *Id.* ¶ 71. Subsequently, on May 11, 2020, Contreras emailed Dr. Chu, stating that there was "no issue from Code Compliance" and advised him to "continue moving forward with filing a Major Use Permit pre-application meeting form." ECF No. 52-12 at 2.

In January 2021, Dr. Chu submitted a Major Use pre-application. TAC ¶ 75; ECF No. 52-13 at 2. On February 1, 2021, the County advised Plaintiffs it would review the application. TAC ¶ 76. Nevertheless, Plaintiffs did not hear anything from the County regarding their pre-application for the next two years. *Id.* ¶ 77. During this same general time period, Contreras allegedly conducted inspections of the Valley Center Property in May 2021, January 2022, and January 2023 "randomly, and without permission or notice." *Id.* ¶ 78.

Dr. Chu and other SFR members later met with County officials to discuss Plaintiffs' application. *Id.* ¶ 81. The TAC alleges that over the course of two meetings, County Officials informed Chu and other SFR members that the County would not approve Plaintiffs' application because of the yurts erected on the Valley Center Property. *Id.* ¶¶ 82–83.

### 4.     Plaintiffs Retain Counsel

Plaintiffs subsequently sought and retained counsel. TAC ¶ 90. In a July 6, 2023 letter, Plaintiffs' counsel advised the County that the zoning ordinance placed a substantial burden on Plaintiffs' religious exercise by requiring them to obtain a Major Use Permit. ECF No. 52-18. The letter set forth Plaintiffs' intent to bring a federal lawsuit if the Parties were "unable to come to an agreement on a Minor Use Permit." *Id.* at 2.

On October 16, 2023, the County responded that the Valley Center Property's "yurts in their current condition present serious concerns related to fire safety, structural integrity, and environmental hazards." ECF No. 52-19 at 2. The County's response further stated:

> The future use of the property will need to match the permit for which Dr. Chu and the Sumana Forest Refuge apply. If the planned use is fewer than 50 people meditating and exploring Buddhism, without taking up residence in the yurts, the County would consider a minor use permit, as it would for the arguably analogous use case of a small school. However, if transient habitation is to be a use, whether primary or accessory, a major use permit is required to ensure the resulting health, safety, and environmental concerns are adequately examined.

*Id.* at 2. Finally, the County cautioned Plaintiffs that "[r]egardless of the permit ultimately applied for and obtained," the Valley Center Property yurts had to "be brought into conformance with the building code." *Id.* Although the letter recognized that this could be "impractical with the existing yurts," it noted the County's willingness to "explore options" with Plaintiffs as to how to do so. *Id.* at 2–3.

On December 1, 2023, Plaintiffs' counsel responded that Plaintiffs' planned use of the property would be for less than 50 persons and reasserted their position that Plaintiffs should be permitted to apply for a Minor Use Permit and maintain the yurts on their property. ECF No. 52-20 at 2–3.

### 5. *Application for Initial Consultation*

Thereafter, Plaintiffs filed an application for a meeting with the County, known as an initial consultation. ECF No. 52-22 at 2. In a letter dated May 28, 2024, the County informed Plaintiffs that it had reviewed Plaintiffs' initial consultation application. ECF No. 52-21 at 2. Based on the project description submitted with Plaintiffs' application, the County's Planning & Development Services Department concluded that Plaintiffs' project required a Major Use Permit. *Id.* at 3. The letter indicated that Plaintiffs could seek a second opinion from the County's Chief of Project Planning and Chief of Land Development. *Id.* at 4.

///

4

6.    *Termination of Power*

In May 2024, Dr. Chu consented to an inspection of the Valley Center Property. TAC ¶ 101. On May 29, 2024, Contreras, along with officials from the Fire Department, the Department of Environmental Health and Quality, and other County agencies, conducted the inspection. *Id*. ¶ 103.

Thereafter, on May 31, 2024, Dr. Chu received a Notice from the County's Department of Environmental Health and Quality Division indicating that graywater was "being illegally discharged onto the ground" at the property. TAC ¶ 107; ECF No. 52-22 at 2. The Notice stated that at the time of the inspection, officials observed ten yurts and several "accessory structures." ECF No. 52-22 at 2. Most of the yurts had "electrical, gas plumbing, and water plumbing." *Id.* Wastewater discharge pipes "were observed from all plumbed yurts" and portable restrooms "were also observed on property," despite there being "no approved means of wastewater treatment/disposal on the property." *Id.*

On June 7, 2024, San Diego Gas & Electric ("SDG&E") terminated power to the Valley Center Property. TAC ¶ 112. In a letter received by Dr. Chu several days later, SDG&E informed him it had received notification from the County that the "electrical and gas services" at the Valley Center Property presented "an immediate hazard to life and property" and that SDG&E could not reconnect power until authorized in writing to do so by the County. TAC ¶ 118; ECF No. 52-24 at 2.

7.    *Post-Complaint Conduct*

On June 6, 2025—more than ten months after Plaintiffs filed this action—Defendants indicated that they needed to again inspect the Valley Center property. TAC ¶ 140. Plaintiffs proposed an on-site inspection pursuant to Federal Rule of Civil Procedure 34(a)(2). *Id*. ¶ 142. Rather than proceed through discovery, the County obtained an inspection warrant from San Diego Superior Court, supported by an affidavit from Contreras, "[t]o enter the property for the purpose of inspecting all unpermitted construction, including, but not limited to, multiple unpermitted yurts with living spaces, kitchens, bathrooms, electrical, and plumbing; attached decks; laundry rooms;

unpermitted storage structures, and other unpermitted structures on the premises." TAC ¶ 145; ECF No. 52-31 at 2–3. Subsequently, on July 22, 2025, the County issued a "Notice and Order to Repair Substandard Building and Abate Public Nuisance" identifying multiple alleged code violations. ECF No. 52-32 at 2–9.

## B. Procedural Background

On July 11, 2024, Plaintiffs filed the instant action against the County. ECF No. 1. On July 12, 2024, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. ECF No. 4. The Court held a hearing on Plaintiffs' motion on July 18, 2024, and denied it without prejudice. ECF No. 8.

### 1. Plaintiffs' First Amended Complaint

On September 9, 2024, Plaintiffs filed a First Amended Complaint ("FAC"). ECF No. 15. The FAC asserted seven claims: (1) a Religious Land Use and Institutionalized Persons Act ("RLUIPA") substantial burden claim; (2) a RLUIPA equal terms claim; (3) a RLUIPA nondiscrimination claim; (4) a claim for violation of the First Amendment right to free exercise of religion; (5) a claim for violation of the First Amendment right to free speech and assembly; (6) a claim for violation of due process under the First and Fourteenth Amendment; and (7) a claim for violation of free exercise and freedom of association under the California Constitution. FAC ¶¶ 111–186.

On September 30, 2024, the County filed a motion to dismiss Plaintiffs' First Amended Complaint. ECF No. 16. Plaintiffs filed an opposition and the County filed a reply. ECF Nos. 19; 20.

On February 24, 2025, the Court granted in part and denied in part the County's motion. *See* ECF No. 21. Specifically, the Court denied the County's motion to dismiss Plaintiffs' RLUIPA equal terms claim, to the extent Plaintiffs were asserting a facial challenge to the County's ordinances governing Major Use and Minor Use permits. *Id.* at 22. The Court granted the County's motion to dismiss Plaintiffs' RLUIPA claims in all other respects. *Id.* Additionally, the Court granted the County's motion to dismiss Plaintiffs' claims for violation of free exercise and free speech under the First Amendment

6

but denied the County's motion to dismiss Plaintiffs' due process claim. *Id.* at 23. Finally, the Court granted the County's motion to dismiss Plaintiffs' claims for violations of the California Constitution. *Id.*

### 2. Plaintiffs' Second Amended Complaint

On March 10, 2025, Plaintiffs filed a Second Amended Complaint ("SAC"). ECF No. 22. The SAC asserted the same seven claims asserted in Plaintiffs' FAC. SAC ¶¶ 139–253. On March 24, 2025, the County filed a motion to dismiss Plaintiffs' SAC. ECF No. 23. Plaintiffs filed an opposition and the County filed a reply. ECF Nos. 26; 28.

On May 5, 2025, the Court granted the County's motion. ECF No. 29. Specifically, the Court dismissed Plaintiff's RLUIPA claims (Claims 1-3) without leave to amend, with the exception of Plaintiffs' facial challenge to the County's ordinance governing land use permits in the A70 Zoning District. ECF No. 29 at 16. The Court further dismissed Plaintiff's claims for violation of the First Amendment right to free exercise (Claim 4) and free speech and assembly (Claim 5), and for violation of free exercise and freedom of association under the California Constitution (Claim 7), without leave to amend. ECF No. 29 at 17.

### 3. Defendants' Amended Answer and Counterclaims/Plaintiffs' Third Amended Complaint

On September 11, 2025, Plaintiff filed a motion for leave to amend their SAC to add a First Amendment retaliation claim. ECF No. 37. The Court granted Plaintiff's motion as unopposed. ECF No. 48.

The County filed an Amended Answer to Plaintiffs' SAC on November 21, 2025. ECF No. 51. The County further filed a Counterclaim against defendant Chu and a crossclaim against cross-defendant Chiungwen Tsai for: (1) nuisance and (2) public nuisance. *Id.* at 18–25. The Counterclaim/Cross-Claim alleges that the structures on the Sumana property are "constructed or maintained in violation of California and County of San Diego building, electrical, plumbing, and fire laws and because they are not safe for human use or habitation." *Id.* at 24.

24-cv-1196-RSH-DDL

On November 25, 2025, Plaintiffs filed a TAC, the operative pleading in this case. ECF No. 52. The TAC asserts three claims: (1) a facial challenge under under RLUIPA's equal-terms provision of the County's zoning ordinance; (2) a claim for violation of due process under the First and Fourteenth Amendments; and (3) a First Amendment retaliation claim. TAC ¶¶ 156–191.

On February 6, 2026, the County filed the instant Motion to Dismiss. ECF No. 63. Plaintiffs filed a response and the County filed a reply. ECF Nos. 63; 64.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

///

///

24-cv-1196-RSH-DDL

## III.   ANALYSIS

### A.   *Monell* Liability (Claims 2 and 3)

The County moves to dismiss Plaintiff's Fourteenth Amendment due process and First Amendment retaliation claims (Claim 2 and 3), arguing that Plaintiff has not adequately pleaded a basis for municipal liability under *Monell*. ECF No. 62-1 at 16–17. The Court addresses this argument below.

#### 1.   Monell, Generally

"The Civil Rights Act codified in 42 U.S.C. § 1983 provides a cause of action against state officials who deprive a plaintiff of [his] federal constitutional rights." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* "The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff." *Est. of Van Tine by & through Van Tine v. Cnty. of San Diego*, No. 25-CV-1403-LL-BLM, 2026 WL 800561, at *3 (S.D. Cal. Mar. 23, 2026) (internal quotation marks omitted).

Municipal entities "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipal entity can be held liable only if a "policy or custom" of the municipality "inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)

9

(quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

"A plaintiff can satisfy *Monell*'s policy requirement in one of three ways." *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021). "First, a local government may be held liable when it acts pursuant to an expressly adopted official policy." *Id.* (internal quotation marks omitted). "Second, a public entity may be held liable for a longstanding practice or custom." *Id.* (internal quotation marks omitted). "Third, a local government may be held liable under [Section] 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 974 (internal quotation marks omitted).

### 2. Retaliation (Claim 3)

In Claim 3 of the TAC, Plaintiffs allege Defendants retaliated against them after portions of their claims in this case survived two motions to dismiss. TAC ¶¶ 183–91. Specifically, Plaintiffs allege Defendants "undertook retaliatory code enforcement actions," including: (1) "[i]nitiating new enforcement proceedings"; (2) issuing fines and penalties; (3) "[e]xpanding the scope or intensity of prior enforcement"; and (4) "[o]therwise seeking to burden or punish Plaintiffs' use of the Property for religious purposes." *Id.* ¶ 186.

The County moves to dismiss Claim 3, arguing that Plaintiffs have not pleaded facts sufficient to establish liability under *Monell*. ECF No. 62-1 at 16–17. Plaintiffs respond that the TAC sufficiently states a retaliation claim against the County because it alleges that the County, "through its authorized officials, initiated inspection and state enforcement proceedings" against Plaintiffs. ECF No. 63 at 18. According to Plaintiffs, these proceedings constituted "institutional enforcement decisions rather than isolated employee misconduct." *Id.* But that argument does not, by itself, identify a cognizable theory of *Monell* liability. Plaintiffs do not point to any factual allegations in the TAC identifying any express County policy or longstanding practice or custom that caused the alleged constitutional violation; at most, they describe the enforcement actions taken against them.

24-cv-1196-RSH-DDL

And to the extent Plaintiffs intend to proceed on a final-policymaker or ratification theory, the TAC does not identify the relevant official, allege that the official possessed final policymaking authority for the County, or plead facts showing that such an official approved the allegedly unconstitutional conduct.

Plaintiffs' reliance on *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012) is misplaced. *see* ECF No. 63 at 19 ("At the pleading stage, Plaintiffs need only plausibly allege that the deprivation flowed from an authorized County decision[.]"). Plaintiffs appear to cite *AE* for the proposition that a plaintiff asserting municipal liability need allege "no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom." 666 F.3d at 637. But in that passage, the Ninth Circuit was recounting its pre-*Twombly* and pre-*Iqbal* precedent. *See id.* at 636 ("In the past, our cases have not required parties to provide much detail at the pleading stage regarding such a policy or custom.") (emphasis added).

*AE* instead held that the following pleading standard governs *Monell* claims:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* at 637 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). *AE* therefore does not support the bare-allegation standard on which Plaintiffs rely.

In sum, Plaintiffs' conclusory characterization of the County's actions in their briefing as "institutional enforcement decisions" is insufficient to state a *Monell* claim. *See Capp v. Cty. of San Diego*, 940 F.3d 1046, 1061 (9th Cir. 2019) (dismissing *Monell* claim in part where pleading ascribed "Defendants' alleged misconduct to official policy in a conclusory fashion that is insufficient to state a viable claim"); *Hart v. Cnty. of Mendocino*, No. 25-CV-04501-RFL, 2026 WL 986261, at *5 (N.D. Cal. Apr. 13, 2026) (dismissing

11

*Monell* claim where complaint contained "only conclusory allegations that these defendants acted pursuant to any municipal policy or custom."); *Milner v. Dodd*, No. 25-CV-03350-JSC, 2026 WL 555494, at *8 (N.D. Cal. Feb. 27, 2026) (dismissing *Monell* claim holding allegation the violation of plaintiff's constitutional rights "were caused by municipal policies, customs, and deliberate indifference" were "conclusory and therefore insufficient"); *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 939 (S.D. Cal. 2022) (holding allegation that County by its "actions or inactions, authorized and/or ratified" the alleged unconstitutional action was "simply too conclusory"); *Barbosa by & through Co-successors in Int. v. Shasta Cnty.*, No. 220CV02298JAMDMC, 2021 WL 1634446, at *4 (E.D. Cal. Apr. 27, 2021) ("[B]ecause Plaintiffs have only alleged unsupported conclusory statements, they have not plausibly stated a *Monell* claim under any of the three theories they advance: unconstitutional customs, policies, and practices, failure to train, and ratification.").

For these reasons, the Court **GRANTS** Plaintiff's motion to dismiss Claim 3 against the County **WITH LEAVE TO AMEND**.[2]

### 3.   *Due Process (Claim 2)*

In Claim 2 of the TAC, Plaintiffs allege that the County violated their due process rights under the Fourteenth Amendment by ordering the termination of electricity at the Valley Center Property without first providing Plaintiffs notice or an opportunity to be heard. TAC ¶¶ 177.[3]

---

[2]   Although Plaintiffs have not adequately pleaded *Monell* liability as to Claim 3, the Court is not convinced that amendment would be futile. *Knappenberger v. City of Phoenix.*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted).

[3]   Although Plaintiffs' section heading states that their due process claim arises under both the First and Fourteenth Amendments, the First Amendment's protection against retaliation and the Fourteenth Amendment's guarantee of due process "are two separate

24-cv-1196-RSH-DDL

The County moves to dismiss Claim 2, arguing that Plaintiffs have not pleaded a sufficient basis for municipal liability under *Monell*. ECF No. 62-1 at 16–17. Plaintiffs respond that the County's *Monell* challenge to their due process claim is procedurally barred because the County filed two prior motions to dismiss without raising this argument. ECF No. 63 at 17–18. The Court agrees.

Here, the County does not dispute it could have raised its *Monell* challenge to Plaintiffs' due process claim in its prior motions to dismiss. Under Federal Rule of Civil Procedure 12(g)(2), a "party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Consequently, "[t]he failure to challenge a particular cause of action in a prior 12(b)(6) motion precludes such a challenge in a subsequent 12(b)(6) motion." *Rutherford v. Palo Verde Healthcare Dist.*, No. LACV1301247JAKSPX, 2014 WL 12631845, at *10 (C.D. Cal. May 20, 2014); *see Fair v. King Cnty.*, No. 2:21-CV-01706-JHC, 2024 WL 4476616, at *7 (W.D. Wash. Oct. 11, 2024) (declining to consider challenge to *Monell* claim that could have been raised in a prior motion to dismiss); *Thuraissigiam v. United States Dep't of Homeland Sec.*, No. 3:18-cv-135-L-AGS, 2018 U.S. Dist. LEXIS 32923, at *2 (S.D. Cal. Feb. 27, 2018) ("Rule 12(g)(2) precludes piecemeal briefing of Rule 12(b) motions to dismiss."). The County's response—that it may raise the argument now because Plaintiffs added Contreras as a defendant—is not persuasive. ECF No. 64 at 5. The County cites no authority allowing it to use the addition of another defendant to revive an available *Monell* argument that it failed to raise earlier. *See id.*

Even assuming the County's *Monell* challenge were timely, it would still fail. *See Hamman v. Cava Grp., Inc.*, No. 22-CV-593-MMA (MSB), 2023 WL 8374747, at *2 (S.D.

---

rights." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020). The due process claim therefore appears more properly brought under the Fourteenth Amendment.

24-cv-1196-RSH-DDL

Cal. Dec. 4, 2023 ("While Rule 12(g)(2) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion, courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy.") (internal quotation marks omitted); *see also, e.g., Pepper v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*, 846 F.3d 313, 319 (9th Cir. 2017) ("[W]e conclude that, as a reviewing court, we should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion."); *Thuraissigiam*, 2018 U.S. Dist. LEXIS 32923, at *2 ("[T]he court may exercise its discretion to grant relief from Rule 12(g)(2).").

Plaintiff's TAC identifies an express County policy—County Construction and Fire Code 91.1.112.3—that appears to form the basis for their claim. TAC ¶ 121. The County itself previously identified section 91.1.112.3 as the official policy governing the challenged disconnection and maintained that its conduct was constitutional because it complied with that policy. ECF Nos. 16 at 23; 21 at 19.

County Construction and Fire Code section 91.1.112.3(a) permits a building official to disconnect utility service without prior notice "in case of emergency" after determining doing so "is necessary to eliminate an immediate hazard to life or property." ECF No. 52-26 at 2. County Construction and Fire Code Section 91.1.112.3(d), in turn, provides that:

> [T]he building official shall notify the serving utility and wherever possible the owner and occupant of the building, structure or service system of the decision to disconnect prior to taking this action. If not notified prior to disconnecting, the owner or occupant of the building, structure or service system shall be notified in writing, as soon as practicable thereafter.

*Id.*

Plaintiffs allege that the County terminated electrical service pursuant to this policy without first notifying them, allowing them to be heard regarding the condition purportedly warranting termination, or giving them an opportunity to cure that condition. TAC ¶¶ 177–78. These allegations are sufficient at the pleading stage to allege a procedural due process

violation based on an express County policy. *See Reed v. City of Emeryville*, 568 F. Supp. 3d 1029, 1039 (N.D. Cal. 2021) (denying motion to dismiss *Monell* claim where Plaintiff adequately asserted injuries stemmed from implementation of an express policy); *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 931 (E.D. Cal. 2015) (same).

### B.  Brandy Contreras, Official Capacity

Because the Court has dismissed Plaintiffs' retaliation claim against the County for lack of *Monell* liability, the Court's remaining inquiry as to Claim 3 is limited to whether Plaintiffs have stated a viable retaliation claim against defendant Brandy Contreras in her official capacity. The County argues that Plaintiffs' claim against Contreras should be dismissed because the official-capacity claim is duplicative of Plaintiffs' claim against the County. ECF No. 62-1 at 17–18.  The Court agrees.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Id.*; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citation omitted); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* [] local government units can be sued directly for damages and injunctive or declaratory relief."). For these reasons, "[i]f an individual is sued in his official capacity as a municipal official and the municipal entity is also sued, the claims against the individuals are duplicative and should be dismissed." *Pyle v. Cheif Justin Gibbs*, No. 2:24-CV-02940-TLN-CSK (PS), 2026 WL 1298134, at \*6 (E.D. Cal. May 12, 2026).

Plaintiffs contend that retaining Contreras in her official capacity is necessary to ensure "complete relief" and to provide "clarity regarding the source of governmental authority." ECF No. 63 at 20. But retaining Contreras does not add any meaningful clarity:

24-cv-1196-RSH-DDL

the County is already a named defendant and Plaintiffs identify no form of relief that could be obtained from Contreras in her official capacity that could not be sought against the County.

Accordingly, because Plaintiffs' official-capacity claim against Contreras is duplicative of their claim against the County, Claim 3 is **DISMISSED** as to Contreras in her official capacity **WITHOUT LEAVE TO AMEND**. *See e.g.*, *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."); *Est. of Bonilla v. Cnty. of Merced*, No. 118CV00329DADSKO, 2019 WL 1405551, at *5 (E.D. Cal. Mar. 28, 2019) (dismissing official capacity suit as "duplicative of plaintiffs' *Monell* claim against the County"); *Neuroth v. Mendocino Cnty.*, No. 15-CV-03226-NJV, 2016 WL 379806, at *6 (N.D. Cal. Jan. 29, 2016) ("[W]hen individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed.") (internal quotation marks omitted); *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) ("[W]hen both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed.").[4]

///

///

///

///

---

[4] Because the Court dismisses Claim 3 against the County for failure to plead *Monell* liability and against Contreras in her official capacity as duplicative of the claim against the County, the Court declines to reach Defendants' alternative grounds for dismissal at this time.

24-cv-1196-RSH-DDL

## IV.   CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss as follows:

1.   The Court **DENIES** Defendants' motion to dismiss Claim 2 against the County.

2.   The Court **GRANTS** Defendants' motion to dismiss Claim 3 against the County **WITHOUT PREJUDICE**.

3.   The Court **GRANTS** Defendants' motion to dismiss Claim 3 against defendant Contreras in her official capacity **WITH PREJUDICE**. To the extent Plaintiffs assert any other claims against Contreras in her official capacity, those claims are likewise **DISMISSED WITH PREJUDICE**.

If Plaintiffs chooses to file a Fourth Amended Complaint, Plaintiff must do so within **fourteen (14) days** of the date of this Order. Defendants' time to respond to the operative pleading will begin to run on the earlier of the date Plaintiffs file a Fourth Amended Complaint or fourteen (14) days from the date of this Order.

**IT IS SO ORDERED.**

Dated: June 24, 2026

_Robert S Huie_
Hon. Robert S. Huie
United States District Judge

17

24-cv-1196-RSH-DDL